# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:                                                          Case No. 20-41025

Loretta Christine Nascene and
Scott Robert Nascene,

      Debtors.                                         Chapter 7

## MEMORANDUM DECISION AND ORDER

At Minneapolis, Minnesota, October 8, 2020.

This chapter 7 case came before the Court on the trustee's motion objecting to claimed exemption (ECF No. 21), along with the debtors' response (ECF No. 25) and the trustee's reply thereto (ECF No. 26). A hearing on the matter was held on August 12, 2020. Appearances were as noted on the record. At the conclusion of the hearing, the Court granted the parties one week to either file a stipulation of undisputed facts or have the matter set on for an evidentiary hearing. The parties timely filed a stipulation of undisputed facts on August 18, 2020 (ECF No. 28), and the Court thereafter took this matter under advisement. It is now ready for resolution.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334. This memorandum decision is based on all the information available to the Court and constitutes the Court's findings of fact and conclusions of law under Fed. R. Bank. P. 7052, made applicable to this contested matter by Fed. R. Bankr. P. 9014(c).

For the reasons stated herein, the trustee's motion objecting to the debtors' claimed exemption is **OVERRULED**. Under the requirements of Minn. Stat. § 550.37, subd. 13 (2019), the debtors properly claimed $150.00 as exempt.[1]

## BACKGROUND

The facts the Court incorporates herein are based on the parties' stipulation of undisputed facts, at ECF No. 28. On March 31, 2020, one of the debtors, Scott Nascene, received $500.00 in earnings from Paw Pet Care Co., his employer. Mr. Nascene deposited the $500.00 into a Wells Fargo checking account the same day it was received. On April 7, 2020, Mr. Nascene withdrew $200.00 in cash from that same account. The next day, April 8, 2020, the debtors filed their voluntary chapter 7 bankruptcy petition and schedules. On June 19, 2020, after their § 341 meeting, the debtors amended their schedules to claim the $200.00 Mr. Nascene withdrew on April 7, 2020, as exempt "cash" under Minn. Stat. § 550.37, subd. 13 (2019). The debtors now assert that $150.00 of that $200.00 is exempt under the Minnesota Statutes.

The trustee filed his objection to the debtors' claimed exemption of cash on July 17, 2020. The debtors filed their response to the trustee's objection on August 7, 2020, and the trustee filed a reply memorandum on August 10, 2020.

## DISCUSSION

### I.    The debtors' disposable earnings exempt from garnishment are exempt under the plain meaning of Minn. Stat. § 550.37, subd. 13 (2019).

Exemptions enable debtors to protect estate property from the reach of creditors. 11 U.S.C. § 522(b). Exemptions are a critical component of an individual's bankruptcy case and are fundamental to the underlying purpose of bankruptcy: to provide debtors with a "fresh start."

---

[1] The Court notes that in the parties' stipulation of undisputed facts, the debtors claimed $150.00 of the $200.00 listed on the amended schedules as exempt under Minn. Stat. § 550.37, subd. 13. Therefore, $150.00 is the amount the Court addresses.

2

Where permitted by an individual state that does not "opt out" of the federal bankruptcy scheme, a debtor may choose to utilize either the federal exemptions outlined by the Bankruptcy Code in 11 U.S.C. § 522 or the exemptions permitted by the debtor's state. 11 U.S.C. § 522(b). When a debtor elects to exempt property from the bankruptcy estate under a state's exemption statutes, the debtor's eligibility for the state exemptions is determined using state law. Hanson v. Seaver (In re Hanson), 903 F.3d 793, 796 (8th Cir. 2018). In Minnesota, a debtor may choose either set of exemptions. Id. at 794 n.1.

Case law is clear that the first step in interpreting state law is to determine whether the relevant statute is ambiguous – in other words, whether it can be reasonably interpreted in more than one way. Id. at 796 (citing Eclipse Architectural Grp., Inc. v. Lam, 814 N.W.2d 692, 700 (Minn. 2012)). It is a fundamental tenet of statutory construction that where a statute's terms are clear and unambiguous, they must be construed "according to their common and approved usage." Id. (quoting S.M. Hentges & Sons, Inc. v. Mensing, 777 N.W.2d 228, 231 (Minn. 2010)). Only if the language is unclear or ambiguous should a court go beyond the language itself to determine the intent of a legislature in enacting the statute. Id. (citing Emerson v. Sch. Bd. of Indep. Sch. Dist. 199, 809 N.W.2d 679, 684 (Minn. 2012)).

In this case, the statute at issue is Minn. Stat. § 550.37, subd. 13 (2019), which addresses the exemption of "All earnings not subject to garnishment by the provisions of section 571.922." In turn, Minn. Stat. § 571.922(a) (2019) limits wage garnishment to "25 percent of the debtor's disposable earnings," and Minn. Stat. § 571.921(b) (2019) defines "disposable earnings" as "that part of the earnings of an individual remaining after the deduction from those earnings of amounts required by law to be withheld." Finally, "earnings" is defined – in relevant part – in Minn. Stat. § 571.921(a) (2019), as "(1) compensation paid or payable to an employee for

3

personal service whether denominated as wages, salary, commissions, bonus, or otherwise [ . . . ]." Minn. Stat. § 550.37, subd. 13, goes on to state:

> A subsequent attachment, garnishment, or levy of execution shall impound only that pay period's nonexempt disposable earnings not subject to a prior attachment, garnishment or levy of execution, but in no instance shall more than an individual's total nonexempt disposable earnings in that pay period be subject to attachment, garnishment, or levy of execution. Garnishments shall impound the nonexempt disposable earnings in the order of their service upon the employer. The disposable earnings exempt from garnishment are exempt as a matter of right, whether claimed or not by the person to whom due. The exemptions may not be waived. The exempt disposable earnings are payable by the employer when due. The exempt disposable earnings shall also be exempt for 20 days after deposit in any financial institution, whether in a single or joint account. This 20-day exemption also applies to any contractual setoff or security interest asserted by a financial institution in which the earnings are deposited by the individual. In tracing the funds, the first-in first-out method of accounting shall be used. The burden of establishing that funds are exempt rests upon the debtor. As used in this section, the term "financial institution" includes credit unions. Nothing in this paragraph shall void or supersede any valid assignment of earnings or transfer of funds held on account made prior to the attachment, garnishment, or levy of execution.

Minn. Stat. § 550.37, subd. 13.

The Court finds this language to be clear and unambiguous based on its common and approved usage: disposable earnings that are not subject to garnishment are unequivocally exempt as a matter of right, whether claimed or not, and this exemption may not be waived. In other words, when an individual, such as the debtor in this case, receives his paycheck from his employer, that paycheck reflects the earnings owed to the individual remaining after the deduction of amounts required by law to be withheld, or his "disposable earnings." However, pursuant to Minn. Stat. § 571.922(a), 25 percent of those remaining disposable earnings are subject to wage garnishment; they are "nonexempt disposable earnings." The other 75 percent of the disposable earnings are unequivocally exempt, as a matter of right. If any nonexempt disposable earnings remain after the wage garnishment permitted by Minn. Stat. § 571.922(a), then Minn. Stat. § 550.37, subd. 13, permits subsequent attachments, garnishments, or levies of

4

execution on those nonexempt disposable earnings, "in the order of their service upon the employer," before the employee receives his paycheck. Therefore, when the paycheck is released to the employee, it reflects the 75 percent of his disposable earnings that are exempt as a matter of right, plus any amounts of the other 25 percent of his nonexempt disposable earnings that remain after the permitted attachments, garnishments, and levies of execution.

The statute further provides that exempt disposable earnings are "*also* exempt for 20 days after deposit in any financial institution" Id. (emphasis added). The "also" in that part of the statute makes this provision an accompaniment to the exemption language, not a requirement of it. In other words, the statute's language concerning deposit into a financial institution does not change the underlying and firm admonishment of the statute's unambiguous language: disposable earnings not subject to garnishment are unequivocally exempt.

The Minnesota Legislature, having established this broad exemption paradigm, went on to provide even more individual protections; the statute specifically states that exempt disposable earnings keep their exempt status for 20 days while on deposit with a financial institution, including against any contractual setoff or security asserted by the financial institution. Again, this provision does not conflict with the statute's basic premise that disposable earnings not subject to garnishment are exempt; it expands upon it.

When an individual deposits his paycheck into a financial institution, the financial institution may subject those funds to attachment, garnishment, or levy of execution under certain circumstances – including for its own gain. In taking the step to add the specific language concerning financial institutions to this statute, the Minnesota Legislature clearly intended to ensure that an individual's exempt disposable earnings remain not only beyond the reach of that

5

Document      Page 6 of 14

individual's creditors but also beyond the reach of the individual's own financial institution for a set period of time.

Therefore, the Legislature specified that even if disposable earnings might otherwise be subject to garnishment when deposited into a financial institution – and therefore potentially placed back within the reach of creditors – it intended for those exempt disposable earnings to remain exempt from attachment, garnishment, or levy of execution for the first 20 days they are on deposit with the financial institution. Given the Minnesota Legislature's earlier explicit pronouncement concerning exempt disposable earnings, it would be illogical to interpret this latter language as only permitting the funds to keep their exempt status if they remain on deposit with the financial institution for 20 days – or, indeed, that they need to be on deposit with a financial institution at all. Quite the opposite; the Legislature proclaimed that exempt disposable earnings are unequivocally exempt, without a timeframe on that exempt status, and that they remain exempt even when the disposable earnings might otherwise become vulnerable to the reach of creditors upon deposit in a financial institution. The 20-day timeframe in the statute, therefore, does not *confer* exempt status, but rather ensures that the exempt status already granted to the exempt disposable earnings remains in place for those 20 days. Simply, it is a timeframe in which the wage earner has the opportunity to use the exempt disposable earnings – even once the earnings have been deposited in a financial institution – without that income being subjected to the reach of creditors or to the reach of the individual's own financial institution.

The remaining language in the statute flows naturally from this interpretation; by specifically citing the first-in first-out tracing method, the Legislature established a common method for both the debtor – who carries the burden of establishing that the funds are exempt – and the financial institution – which must operate within the strict confines of the statutory

exemption – to determine whether the account funds in question do, indeed, qualify under the statute's requirements as exempt "disposable earnings." In clarifying that the exemption applies to disposable earnings deposited into an individual's account, regardless of whether that account is individually or jointly held, the Legislature again provided clarification to avoid a potential loophole and ensure protection of an individual's exempt disposable earnings. Additionally, perhaps in anticipating an argument by a credit union to distinguish itself from the general "financial institution" term, the Minnesota Legislature specifically included credit unions in the definition of "financial institution" for the purpose of this section.

Finally, the Legislature created a caveat in its exemption language – that the rest of the subdivision would not "void or supersede any valid assignment of earnings or transfer of funds held on account made prior to the attachment, garnishment, or levy of execution." Minn. Stat. § 550.37, subd. 13. By placing this language in the statute, the Legislature yet again made its intent clear: financial institutions may not interfere with an individual's use of his exempt disposable earnings for the first 20 days those earnings are on deposit with the financial institution.

Still, the statute places a significant burden on the debtor; the onus remains with the individual to show that the funds on deposit with the financial institution qualify as exempt disposable earnings. Therefore, the issue in the present case is whether the debtors have met that burden to show that the funds at issue are part of the exempt portion of their disposable earnings under Minn. Stat. § 557.922(a).

The debtors here provided the relevant bank statement and paycheck, at ECF No. 25, to show the following: on March 30, 2020, Mr. Nascene's bank account had a balance of $153.09. On March 31, 2020, Mr. Nascene received a $500.00 check from Paw Pet Care Co., which he

deposited into his account. Id. The debtors spent more than $153.09 from the account before Mr. Nascene withdrew the $200.00 on April 7, 2020. Id. Using the first-in first-out accounting method prescribed by Minn. Stat. § 550.37, subd. 13, the $200.00 withdrawal is traceable to the $500.00 wage deposit into the financial institution. Additionally, since the debtors are claiming just $150.00 as exempt – which is 75 percent of the $200.00 withdrawal and a mere 30 percent of the total $500.00 deposit – they have followed the requirements of the statute. Therefore, the debtors have successfully met their burden to show that the $150.00 they claim as exempt is traceable to their exempt disposable earnings; as such, under Minn. Stat. § 550.37, subd. 13, the $150.00 was exempt when the debtors filed their bankruptcy case on April 8, 2020.

**II.     Legislative intent supports the unequivocal exemption of disposable earnings.**

Although the Court need not reach the issue of legislative intent if it finds a statute to be clear and unambiguous, Hanson, 903 F.3d 793, 796 (8th Cir. 2018), it notes that legislative intent clearly supports the statutory interpretation espoused herein. As Minnesota courts have long held, exemption statutes should be liberally construed in favor of debtors, and should not be construed in a "'narrow or illiberal manner' or in a way that would cause positive injury and wrong." In re Drenttel, 309 B.R. 320, 325 (B.A.P. 8th Cir. 2004), aff'd, 403 F.3d 611 (8th Cir. 2005) (quoting Olin v. Fox, 79 Minn. 459, 82 N.W. 858, 858 (Minn. 1900)) (See also In re Hardy, 787 F.3d 1189, 1192 (8th Cir. 2015)). Further, "[e]very law should be construed to give effect to all of its provisions. [ . . . ] That is, the statute should not be interpreted so that any word, phrase, or sentence is superfluous." In re Irwin, 232 B.R. 151, 152 (Bankr. D. Minn. 1999), aff'd, Civ. No. 99-705 (DSD) (D. Minn. June 7, 1999).

The intent behind Minn. Stat. § 550.37 is to "protect a debtor and his family against absolute want by allowing them out of his property some reasonable means of support and

education and the maintenance of the decencies and proprieties of life." Fullerton Lumber Co. v. Carstens, 80 N.W.2d 1 (Minn. 1956) (citing Poznanovic v. Maki, 296 N.W.2d 415, 417 (Minn. 1941)). Additionally, "States which wish to elect to opt out of the federal exemptions must still provide debtors adequate property for them to begin their fresh starts." In re Balgemann, 16 B.R. 780, 782 (Bankr. N.D. Ill. 1982).

An examination of the legislative history of Minn. Stat. § 550.37, subd. 13, shows that the language concerning deposit of funds into a financial institution was added in 1976. Before that time, the statute stated:

> A subsequent attachment, garnishment or levy of execution shall impound only that pay period's non-exempt disposable earnings not subject to a prior attachment, garnishment or levy of execution, but in no instance shall more than an individual's total non-exempt disposable earnings in that pay period be subject to attachment, garnishment or levy of execution. Garnishments shall impound the non-exempt disposable earnings in the order of their service upon the employer. The disposable earnings exempt from garnishment are exempt as a matter of right, whether claimed or not by the person to whom due. Such exemptions may not be waived. Such exempt disposable earnings are payable by the employer when due. Nothing in this paragraph shall be construed to void or supersede any valid assignment of wages made prior to the attachment, garnishment, or levy of execution.

Minn. Stat. § 550.37; Laws of Minnesota for 1976, Ch. 335 – H.F. No. 1326. Clearly, the original impetus of the statute was to ensure that an individual's exempt disposable earnings remained in the control of that individual and out of the reach of that individual's creditors; the provisions concerning deposit of those disposable earnings into a financial institution – added later – were not the foundation of the statute, but merely an accompaniment to it.

Importantly, the interpretation of Minn. Stat. § 550.37, subd. 13, enumerated here does not expand the language of the statute to make an individual's earnings exempt in any form; the statute defines "disposable earnings," explains that 75 percent of those disposable earnings are

9

exempt as a matter of right, and assigns the burden to the debtor to establish that his funds are exempt.

In the same vein, the statutory interpretation outlined here does not make "deposited into a financial account" superfluous language, as the trustee argues; again, the financial account protection is an accompaniment to the exempt status the Minnesota Legislature assigned to exempt disposable earnings, not an alternative to it. In fact, reading the statute to assign exempt status to earnings only so long as they are on deposit in a financial institution would render superfluous the express and unambiguous exemption language earlier in the subdivision.

### III. The statutory interpretation delineated herein does not create new requirements, exemptions, or leniencies.

The trustee's concerns about a debtor's potential ability to convert his exempt disposable earnings into any form – including assets – under this statutory interpretation are well-taken, but not well-founded. The express terms of the statute itself, along with certain "safety nets" put in place by the Bankruptcy Code, ensure that provisions like this exemption statute are not abused. For example, if a debtor took his exempt disposable earnings and used them to purchase, say, a sports car, that sports car certainly could not qualify for exemption under the statute, because it could not meet the definition of "disposable earnings" under Minn. Stat. § 571.921(b) – "that part of the earnings of an individual remaining after the deduction from those earnings of amounts required by law to be withheld" – or under Minn. Stat. § 571.921(a), which defines "earnings" in relevant part as "(1) compensation paid or payable to an employee for personal service whether denominated as wages, salary, commissions, bonus, or otherwise [ . . . ]."

Similarly, compensation denominated in cash could qualify under this definition (assuming the debtor could provide the proper paper trail), but another asset purchased with that cash could not. Therefore, a debtor would be unable to carry his burden to prove that a sports car

10

could qualify as "earnings" or "disposable earnings" under the definitions in the statute, and would not be able to claim it – or other assets – exempt using this wage garnishment statute. While the Court could certainly imagine a situation in which a debtor – keeping this statute in mind – might arrange to be paid a "bonus" in the form of an asset such as a sports car, this issue is not before the Court. Additionally, even if it were before the Court, the Bankruptcy Code has built-in "safety nets," such as 11 U.S.C. § 727, to ensure that debtors who take these kinds of actions (or actions like buying a new sports car with otherwise exempt disposable earnings) do not receive the benefit of a discharge through their bankruptcy cases.

Notably, Minn. Stat. § 571.921(a) also limits earnings to compensation paid or payable to an "employee," which the statute goes on in part (c) to define as "an individual who performs services subject to the right of the employer to control both what is done and how it is done." These definitions address any concerns about a commission-based independent contractor receiving a particularly large commission payment and abusing this exemption provision to exempt that payment from the bankruptcy estate. Further, and as was discussed previously, the Bankruptcy Code's built-in "safety nets" are designed to deter this kind of behavior and prevent an individual from benefitting from it.

Of course, these statutory definitions also imply that a self-employed individual would likely be unable to benefit from this exemption. Still, it is not the Court's place to go beyond the plain language of the statute before it; rather, the Court is obligated to interpret and follow the unambiguous language delineated by the Minnesota Legislature in creating its statutes.

It is true, as the trustee argues, that the Legislature did not provide any express reference or provision through which a debtor can claim an exemption for cash. What the Legislature did provide, however, is a definition of "disposable earnings," an admonishment that 75 percent of

11

those disposable earnings are exempt as a matter of right, and an impetus on the debtor to prove that any funds he claims are exempt meet these qualifications. It is clear, then, that the Legislature did, in fact, provide that a debtor may exempt cash derived from his wages – so long as the debtor can meet his burden to prove that the cash he seeks to exempt qualifies for exemption under the statute's requirements.

The trustee further argues that Subdivision 13 requires that any exemption claim for funds be traceable to earnings. The Court agrees. The trustee also argues that the language concerning the first-in first-out accounting method could not apply to earnings outside of financial institutions, because the claimed asset would be cash and there would therefore be no available records to permit tracing of those funds. The Court disagrees.

The statute requires an individual claiming funds as exempt to be able to trace those funds back to the statute's definition of "disposable earnings." However, how that individual chooses to accomplish that task – whether by showing records from his employer that he cashed his paycheck directly, for example, or by showing that he deposited those funds into a financial institution – is within that individual's own discretion. Simply, the statutory language makes it clear that in this specific context, the burden of proving the exempt status of funds is not the trustee's burden to bear. Similarly, the trustee's well-intentioned and well-argued concerns about the traceability of funds outside of financial institutions are ultimately mooted by the statute's plain language: the trustee does not bear the burden of tracing those funds – rather, the debtor bears the burden of proving that the funds are, indeed, exempt under the requirements of the statute.

Finally, the trustee is accurate in his argument that a debtor's earnings are protected from his creditors and the bankruptcy estate by the express provisions of Subdivision 13. However, to

interpret the statute's language as *never* exempting disposable earnings unless they are deposited into a financial institution is to completely ignore the clear, unambiguous, and firm admonishment from the Legislature within the same subdivision: "The disposable earnings exempt from garnishment are exempt as a matter of right, whether claimed or not by the person to whom due. The exemptions may not be waived."

## CONCLUSION

The plain language of Minn. Stat. § 550.37, subd. 13, makes it clear that the Minnesota Legislature intended for 75 percent of an individual's disposable earnings to be exempt from garnishment as a matter of right. The language in the statute concerning deposit of those disposable earnings into a financial institution was added later, and the word "also" in that phrase works to add nuance and depth to the basic statutory exemption, not alter the exemption paradigm or confer exempt status in its own right. Simply, the language addressing deposit of funds into financial institutions ensures that the exemption already conferred on disposable earnings continues to apply to those earnings for a specified period of time if they are deposited in financial institutions.

Here, the debtors have shown – using the prescribed first-in first-out method – that the funds they claim are exempt can be traced back to the exempt portion of their disposable earnings. Therefore, they have carried their burden to prove that at the time they filed their bankruptcy petition, the disposable earnings were exempt as a matter of right. Further, under the plain language of the Minnesota Statutes, the debtors' disposable earnings were exempt regardless of whether the debtors deposited those earnings in a financial institution.

Accordingly, **IT IS HEREBY ORDERED**:

1. The chapter 7 trustee's objection to the debtors' claimed exemption is

   **OVERRULED**.

2. Under the requirements of Minn. Stat. § 550.37, subdivision 13 (2019), the debtors

   properly claimed $150.00 as exempt.


Dated: October 8, 2020

*/e/ Michael E. Ridgway*
Michael E. Ridgway
Chief United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 10/08/2020
Lori Vosejpka, Clerk, by MJS